Approved: _____
SAMUEL RAYMOND/DAVID FELTON
Assistant United States Attorneys

Before:  HONORABLE PAUL E. DAVISON
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :  **COMPLAINT**

        - v. -                   :  Violations of
                                    21 U.S.C. §§ 812, 841(a)(1),
RAPHAEL RIVERA,                  :  841(b)(1)(B), 841(b)(1)(C),
     a/k/a "Ralphy,"                and 846
                                 :
             Defendant.          :  COUNTY OF OFFENSE:
                                    WESTCHESTER
- - - - - - - - - - - - - - - - - X

19 MAG 4778

SOUTHERN DISTRICT OF NEW YORK, ss.:

EDWARD MAHER, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, and charges as follows:

COUNT ONE

1. From at least on or about February 6, 2018 through on or about June 7, 2018, RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and object of the conspiracy that RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, conspired to distribute and possess with intent to distribute was 100 grams and more of a mixture or substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846)

COUNT TWO

4.  On or about May 15, 2019, RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, in the Southern District of New York, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5.  The controlled substance that RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, distributed and possessed with intent to distribute was a mixture and substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6.  I am a Special Agent with the Drug Enforcement Administration ("DEA"), and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, including my review of pertinent documents and recordings, my participation in surveillance, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Controlled Purchases from RAPHAEL RIVERA and Orders of Interception

7.  Since in about February 2018, the DEA, Mount Vernon Police Department, Yonkers Police Department, and Westchester County District Attorney's Office have been investigating narcotics distribution in the Bronx and Westchester County.

8.  Sometime in or before February 2018, a confidential

informant ("CI-1")[1], alerted law enforcement that he knew RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, was selling heroin.

9. On or about February 6, 2018, at the direction and in the presence of law enforcement agents, including myself, CI-1 placed a telephone call to a phone number ending in 2894 (the "2894 Number"), which CI-1 believed to belong to RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, to arrange to purchase a quantity of narcotics that day at a location in the Bronx. In the conversation, which was recorded, CI-1 said, in substance and in part, "I'm going to need 14 minutes, alright?" After the call, law enforcement searched CI-1 for contraband, and none was found. Law enforcement then provided CI-1 with $910 in pre-recorded buy money and drove CI-1 to the pre-arranged meeting location in the Bronx.

10. I, along with other law enforcement officers, conducted surveillance of CI-1's meeting with RAPHAEL RIVERA, a/k/a "Ralphy," the defendant. I also participated in the debriefing of CI-1, after the meeting. Based on my observations during surveillance and the debriefing, I have learned, in substance and in part, the following:

a. When CI-1 arrived at the meeting location, CI-1 exited the law enforcement vehicle and entered into a Nissan Altima (the "Altima").

b. I have learned from another member of the surveillance team that the driver of the Altima matched RIVERA's driver's license photograph from the New York State DMV.

c. After CI-1 got into the Altima, the Altima drove about a block, and then CI-1 exited the car.

d. CI-1 then met with law enforcement at a pre-arranged location, where he handed over 14 bundles which he said he had received from RIVERA while in the Altima.

e. A law enforcement agent later opened the

---

[1] CI-1 has a number of prior arrests and convictions. CI-1 has been working for the Mount Vernon Police Department as a paid informant, and has received money for his assistance in the instant investigation. The information that CI-1 has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence, including physical surveillance of the controlled purchases.

bundles, and found a total of 140 glassine envelopes. At least one of those glassine envelopes was laboratory tested, and came back positive for the presence of heroin. I also concluded, based on my participation in the investigation, that RIVERA took CI-1's reference to "14 minutes" as providing CI-1 with 14 bundles of heroin.

11. I have spoken with other members of law enforcement who conducted another controlled purchase from RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, with CI-1, on or about February 14, 2018, at a location in the Bronx, arranged by CI-1 calling the 2894 Number. In the initial telephone conversation between CI-1 and RIVERA, CI-1 said he needed "14." At the controlled purchase, RIVERA provided CI-1 with 14 bundles of substances, each containing 10 glassine envelopes. At least one of these envelopes tested positive for the presence of heroin.

12. Based on the controlled purchases, among other information, on or about April 4, 2018, Barry Warhit, Acting Supreme Court Justice, Westchester County, New York, signed an order authorizing interception of calls and text messages over the 2894 Number. Soon thereafter, law enforcement learned that the 2894 Number was deactivated. CI-1 learned from acquaintances that RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, was using another number, ending in 5890 (the "5890 Number"). Justice Warhit signed an order of interception for the 5890 Number on or about April 10, 2018. Justice Warhit later renewed this order on or about May 9, 2018.

13. Over the course of the interceptions of the 5890 Number, RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, was intercepted numerous times speaking with other individuals. Based on my review of the intercepted calls, as well as my training, experience, and participation in the investigation, I believe that RIVERA supplied some of those individuals with quantities of heroin for redistribution.

a. For example, RIVERA was in frequent contact with an individual using a telephone number ending in 0119 (the "0119 Number"). In a conversation between the user of the 0119 Number and RIVERA, on or about April 23, 2018, the user of the 0119 Number said, in substance and in part, he needed "11." In subsequent conversations later that same day, the user of the 0119 Number and RIVERA agreed to meet at a location, apparently in the Bronx.

b. On April 27, 2018, the user of the 0119 Number

asked RIVERA for "15." In subsequent conversations that day, the two agreed to meet at a location, apparently in the Bronx.

           c. On May 5, 2018, the user of the 0119 Number asked RIVERA for "20." In subsequent conversations that day, the two agreed to meet at a location, apparently in the Bronx.

           d. Based on my training, experience, and participation in this investigation, I believe that the user of the 0119 Number was purchasing heroin from RIVERA, given his request for specific numbers, just like CI-1 had requested during the controlled purchases described above in paragraphs 7-9. I also believe, based on my training and experience that the user of the 0119 Number was purchasing heroin from RIVERA for re-distribution, because, in part, on the quantity of bundles of heroin the user of the 0119 Number was purchasing, and the frequency with which the user of the 0119 Number was purchasing.

       14. Based on my review of the intercepted calls on the 5890 Number, as well as my participation in this investigation, I also believe that many customers of RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, drove from Westchester County to meet RIVERA in the Bronx, and then returned to Westchester County, where they redistributed the heroin. For example, law enforcement believes they have identified the user of the 0119 Number, a person who lives in Westchester County, and I believe, based on this person's purchase of re-distribution quantities of heroin, and conversations with other law enforcement officers, the user of the 0119 Number is distributing heroin he purchased from RIVERA in Westchester County.

           a. Based on my review of the intercepted communications on the 5890 Number, as well as my training, experience, and participation in this investigation, I believe that during the pendency of this investigation, RIVERA sold more than 100 grams of heroin. Specifically, based on my review of the intercepted communications, I estimate he sold over 2000 bundles of heroin, which, conservatively, is more than 600 grams of heroin.

       15. On or about May 15, 2019, I and other members of law enforcement made a probable cause arrest of RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, outside of his residence in the Southern District of New York. I and other members of law enforcement interviewed RIVERA, the defendant, that day. At the outset of the interview, I informed RIVERA of his *Miranda* rights. RIVERA waived his rights, agreed to speak to law enforcement, and consented to a search of his residence and car. Based on my

conversations with RIVERA and the consent search of RIVERA's residence and car, I have learned the following, in substance and in part:

   a. RIVERA retrieved from his residence and car and gave to me approximately 370 bundles of a substance that RIVERA claimed to be heroin. Based on my training, experience, and participation in this investigation, I believe the substance in the 370 bundles to be heroin.

   b. RIVERA retrieved and gave to me approximately $19,000 of cash.

   c. RIVERA told me that he is unemployed and the cash he retrieved is drug proceeds.

 WHEREFORE, deponent respectfully requests that RAPHAEL RIVERA, a/k/a "Ralphy," the defendant, be imprisoned or bailed, as the case may be.

         _____
         EDWARD MAHER
         Special Agent
         Drug Enforcement Administration

Sworn to before me this
16 day of May, 2019

_____
HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6